UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23134-BLOOM/Louis

GARY R PENICK,

    Plaintiff,

v.

HARBOR FREIGHT TOOLS, USA, INC.,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court upon Defendant's Amended Motion to Dismiss due to Plaintiff's Bad Faith Spoliation of Evidence, ECF No. [33] ("Motion"). Plaintiff filed a response in opposition, ECF No. [42] ("Response"), to which Defendant did not file a reply. The Court has reviewed the Motion, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

    **I.    BACKGROUND**

Plaintiff initiated a lawsuit in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida that was removed to this Court on July 29, 2019 on diversity of citizenship grounds. ECF No. [1]. According to the Complaint, ECF No. [1-1] at 10-16, Plaintiff sustained serious injuries to his face and his eyes while operating a Predator 4000 Generator sold by Defendant. In particular, he alleges that after removing the gas cap on top of the generator to check the volume of gas while the generator was running, fumes from the gas tank ignited and created a flash explosion. The explosion resulted in facial burns and bilateral corneal burns to his eyes. The Complaint asserts three causes of action against Defendant: negligence (Count I), strict liability (Count II), and failure to warn (Count III). Defendant filed its answer and affirmative defenses to the Complaint on

August 5, 2019. ECF No. [7].

Defendant now moves for sanctions against Plaintiff—dismissal of the lawsuit or alternatively excluding any Plaintiff liability expert testimony and issuing a burden-shifting presumption jury instruction—due to Plaintiff's alleged "bad faith spoliation of evidence." ECF No. [33]. As set forth in the Motion, Plaintiff's underlying incident with the generator occurred on October 21, 2018, Plaintiff retained counsel in November 2018, who "personally viewed and took photographs of the Generator, which was in Mr. Penick's sole possession," yet sometime in the Spring of 2019, Plaintiff disposed of the generator by personally driving it and turning it over to a scrap yard. *Id.* at 2-3. Defendant represents that it learned about the generator's disposal on or about May 20, 2019, *id.* at 3, which is before the Complaint was filed in state court on June 19, 2019, ECF No. [1-1] at 4, 10. Defendant asserts that it was not given any opportunity to inspect the generator nor was it notified beforehand that Plaintiff intended to dispose of it. ECF No. [33] at 3.

According to Defendant, Plaintiff's actions have "severely and irreparably prejudiced Harbor Freight's ability to mount a defense." *Id.* at 4. In particular, Defendant argues as follows:

> Mr. Penick's actions robbed Harbor Freight of the ability to directly examine the single most important piece of evidence in this products liability case, the Generator itself. The inability to examine the Generator has precluded Harbor Freight from, among other things, having its experts examine the Generator to test the validity of Plaintiff's theory and causation of the alleged fire; determining whether or not aftermarket modifications were made to the Generator; testing whether or not the Generator had been properly maintained, or it if had been broken or misused; and determining whether or not the Generator even exhibited any evidence of being involved in the violent fiery explosion alleged by Mr. Penick. Without the Generator, there is no way to determine if Mr. Penick is even telling the truth about the alleged incident. Notably, there are no witnesses, other than Mr. Penick himself, to the alleged incident.
>
> Reports prepared by Harbor Freight's fire and explosion causation expert, Thomas Young, IAAI, CFI, (V) CFEI, CFII, and mechanical engineering expert, Avelaino McGibbon, BSME, P.E., demonstrate the prejudice created by Mr. Penick's intentional destruction of the Generator. Both experts opine that destruction of the

> Generator has precluded them from validating Mr. Penick's allegations. See, EXHIBIT B - May 22, 2020, Report Prepared by Thomas Young, IAAI, CFI, (V) CFEI, CFII at Page 2;[1] and EXHIBIT C - May 20, 2020, Report Prepared by Avelaino McGibbon, BSME, P.E. at Page 2.[2]

*Id.* at 3-4 (bolding omitted; citations removed; footnotes added).

Defendant posits that the destroyed generator is the "*only* piece of evidence that could support or refute Mr. Penick's extraordinary allegations," and thus sanctions are merited. *Id.* at 4 (emphasis in original). He makes three general arguments. First, Plaintiff's actions exhibit bad faith and warrant dismissal of the case in its entirety. *Id.* at 5-8 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) and *Torres v. Matsushita Elec. Corp.*, 762 So. 2d 1014 (Fla. 5th DCA 2000)). Second, Defendant has been severely prejudiced by Plaintiff's disposal of the generator. *Id.* at 8-11. Finally, Defendant maintains that lesser sanctions are nonetheless appropriate if the Court is unwilling to dismiss the case. *Id.* at 11-13.

In response, Plaintiff admits that he disposed of the generator, but he argues that his actions were not born out of a bad faith "intention to deprive anyone of the opportunity to inspect the generator." ECF No. [42] at 8. In particular, he notes that his attorney took pictures of the generator

---

[1] Mr. Young's report states that "[t]o the extent any evaluation could be conducted on the generator reported to have spontaneously erupted into an explosive event remains a non-validated event. There was no supporting evidence that the generator represented in the photos provided was involved in a fiery explosive event. The photographs provided were insufficient to render any opinion with any professional certainty as to the authenticity of the photos taken, nor the item as represented in the photographs as having any outward indication of thermal damages." ECF No. [33-2] at 2. The report also notes that "[t]he absence of the presence of any thermal deformation to the generator as provided in the photographs was also significant. Mr. Penick's description of the events was inconsistent with the sequence or mechanism with this type of event as reported. The pressure rise associated with the ignition of an unconfined diffuse vapor is not enough in magnitude or duration to result in the damage presented by the images nor the description of explosive force by Mr. Penick." *Id.*

[2] Mr. McGibbon's report stated that "Mr. Penick's representation of these events could not be verified because he reportedly disposed of his generator" and "[a]n exemplar generator was purchased and operated. During this operation, the generator operated as expected and did not catch fire. Based on the Rimkus inspection of the exemplar generator, no design defects were observed." ECF No. [33-3] at 3.

in November 2018, and he cites the following deposition testimony for context:

> Every time I walked by it I remembered because my face was all messed up and I wasn't the same person that am now -- I mean, that I was then. I mean, I was scared of it. I didn't even want to touch it. It caused me so much pain. I mean, it was real painful, what I had to go through, for a long time. I went through a lot of pain, and it made it where I couldn't see, and it may be I can't hear. Now, I don't know. My mind is not the same as it was either.

*Id.* at 7-8 (citing ECF No. [33-1] at 92:11-24). According to Plaintiff, he knew that his attorney's photographs would be given to Defendant, and "[b]ut for the psychological impact which the generator caused him every day, he would not have scrapped it." *Id.* at 9. He adds that he disposed of the generator "to preserve his sanity." *Id.* at 10. Plaintiff's counsel remarks that he was not aware Plaintiff was going to "scrap the generator," otherwise "it would have been secured." *Id.* at 8. Plaintiff further contends that the generator is not the only piece of evidence that could support or refute his allegations. In this respect, he maintains that "there was no abuse on the part of [Plaintiff], there is no potential trial by ambush, nor did [Plaintiff's] scrapping of the generator prevent Defendant's experts from testing the validity of [his] allegations." *Id.* at 10. He concludes that Defendant did not "sustain significant and irreparable prejudice," and dismissal is unmerited. However, he agrees that should the Court conclude that sanctions are warranted, the alternative sanctions requested by Defendant should be imposed. *Id.* at 11-12.

The Motion, accordingly, is ripe for consideration.

## II.  LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation omitted). In a diversity action such as the instant case, federal law governs the imposition of spoliation sanctions. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) ("conclud[ing] that federal law

governs the imposition of sanctions for failure to preserve evidence in a diversity suit."). Although federal law governs, "the Court may look to state law for guidance to the extent that it is consistent with federal law." *Wilson v. Wal–Mart Stores, Inc.,* No. 5:07–cv–394–Oc–10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted).

The moving party carries the burden of proof. "To establish spoliation, the party seeking sanctions must prove several things; first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Walter v. Carnival Corp.,* No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D.Fla. July 23, 2010) (citing *Floeter v. City of Orlando*, 6:05–cv–400–Orl–22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb. 9, 2007)). Even if all three elements are met, "[a] party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absences of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." *Id.* at *2 (citing *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (adverse inference from party's failure to preserve evidence must be predicated on bad faith). "Mere negligence" in losing or destroying records is not enough for an adverse inference, as "it does not sustain an inference of consciousness of a weak case." *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). *See also In Matter of Complaint of Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 516 (S.D. Fla. 2015) (noting that "even grossly negligent conduct would not justify [an adverse inference] jury instruction when it is not accompanied by bad faith").

If direct evidence of bad faith is unavailable, the moving party may establish bad faith through circumstantial evidence. *Id.*; *see also Atl. Sea Co. v. Anais Worldwide Shipping, Inc.*, No. 08–23079–CIV, 2010 WL 2346665, at *2 (S.D. Fla. June 9, 2010) (noting that where the movant "offer[s] no direct evidence of bad faith, . . . this Court must assess the circumstantial evidence of

5

bad faith under the standard set forth in *Calixto*."). The following constitutes circumstantial evidence of bad faith:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Walter*, 2010 WL 2927962, at *2 (citing *Calixto v. Watson Bowman Acme Corp.*, No. 07–60077–CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009)). The party seeking the sanctions must establish all four of these factors where there is no direct evidence of bad faith. *Calixto*, 2009 WL 3823390, at *16 (stating that "in this Circuit, bad faith may be found on circumstantial evidence where all of the [aforementioned] hallmarks are present").

District courts have "broad discretion" to impose sanctions, which power "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury*, 427 F.3d at 944. Sanctions may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* at 945. Dismissal represents the most severe sanction available to a federal court, and therefore is only imposed "where there is a showing of bad faith and where lesser sanctions will not suffice." *Id.* at 944. "Because this Circuit requires a showing of bad faith before sanctioning a party when there is spoliation of evidence, courts in this Circuit must refrain from imposing sanctions when no bad faith is shown." *Bos. Boat III*, 310 F.R.D. at 516.

### III.     DISCUSSION

The instant dispute invokes two key issues: whether Plaintiff's disposal of the generator amounts to bad faith, and if so, whether sanctions are warranted. The Court answers both issues in the affirmative.

As an initial matter, the Court finds that Defendant has demonstrated the three foundational elements to establish spoliation. *Walter*, 2010 WL 2927962 at *2. First, the generator existed at one time. In fact, based on the materials presented, the generator existed sometime prior to May 20, 2019 (when Defendant's counsel learned that the generator was discarded) at the latest. Second, Plaintiff knew or should have known he had a duty to preserve the generator. Not only had he retained counsel at that time (thus contemplating litigation), but the generator's central role in allegedly causing his injuries made it patently obvious that the generator would be relevant to potential litigation with Defendant. *Calixto*, 2009 WL 3823390, at *16 ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or *potential litigation* . . . [A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action.") (citation omitted; emphasis in original); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1324 (S.D. Fla. 2010) ("A party has an obligation to retain relevant documents, including emails, where litigation is reasonably anticipated."). And third, the evidence is crucial to Defendant's defense against Plaintiff's claims. The Complaint alleges that the generator was defective "when it left the possession of the Defendant," it was "unsafe for its intended use by reasons of the defective condition in its design, manufacture, components and failure to have sufficient warning instructions," and the defects directly and proximately caused Plaintiff's injuries. ECF No. [1-1] at 13 ¶¶ 16-24. While Plaintiff is correct that the generator is not the only evidence that could

corroborate or refute his allegations, it undoubtedly is one of the main pieces of evidence that could be used to help resolve the underlying matters in this products liability case.

To further merit sanctions, Defendant must establish bad faith destruction of the generator by direct evidence or by circumstantial evidence. Courts in this district have interpreted "bad faith" in the spoliation context to not require a showing of malice or ill-will, but rather conduct evidencing more than mere negligence. *See, e.g.*, *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343, 1350–51 (S.D. Fla. 2016) (noting that in the spoliation context, "bad faith "does not require malice and is defined by weighing 'the degree of the spoliator's culpability against the prejudice to the opposing party.' Furthermore, the spoliator's degree of culpability must be more than mere negligence") (internal citation omitted); *Bos. Boat III*, 310 F.R.D. at 514 ("Because the Eleventh Circuit's decision in *Green Leaf Nursery* did not include 'intentional' in its definition of the destruction of evidence requirement for spoliation, the Undersigned will not include that requirement in the analysis."); *Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684, 2018 WL 4859071, at *6 (S.D. Fla. Oct. 4, 2018) (bad faith spoliation existed even though defendant's destruction of documents was "systematic and regular"); *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088, at *7 (S.D. Fla. July 31, 2013) (granting in part motion for sanctions based on spoliation of evidence, and explaining that "'bad faith' is not limited to acts of malice or willful intent. In the Eleventh Circuit, in a variety of contexts bad faith is deemed to exist in either a case of intentional misconduct or reckless disregard of the consequences"). *See also Graff*, 310 F. App'x at 302 (approving of court's spoliation sanctions because "[e]ven if the plaintiffs did not act with malice when they spoliated evidence, the plaintiffs were the more culpable party and caused the manufacturers substantial prejudice"). Plaintiff's actions satisfy a showing of bad faith.

Plaintiff's disposal of the generator was not accidental nor merely negligent. He voluntarily and personally took it to a scrap yard after he had retained counsel and anticipated filing suit against Defendant. Although the record does not reflect that Plaintiff specifically intended to harm Defendant or obstruct this lawsuit by disposing of the generator, Defendant has demonstrated that Plaintiff's decision was purposeful, fully considered, and based on a desire to destroy the generator itself. For instance, when asked what he did with the generator, Plaintiff admitted that he scrapped it because while he "thought about giving it to somebody else . . . [he did not] want that [same underlying incident] to happen to somebody else" and he was "really [] tired of looking at it and the damage it did to [him]." ECF No. [33-1] at 24:12-25. Additionally, Plaintiff represents in the Response that "[b]ut for the psychological impact which the generator caused him every day, he would not have scrapped it." ECF No. [42] at 9. He also represents that he scrapped the generator "to preserve his sanity." *Id.* at 10. Plaintiff's personal feelings aside, he should have known that the generator would need to by physically inspected and tested by Defendant, preserved for this litigation, and that it would be important to both parties' arguments. That photographs of the generator were taken, *see* ECF No. [42] at 2, supports the finding that Plaintiff' was aware the generator was a critical piece of evidence. After all, Plaintiff's lawsuit alleges that the generator was inherently defective, not simply that it lacked sufficient warnings about the generator's dangers.

In applying the circumstantial evidence factors above, *Walter*, 2010 WL 2927962, at *2, each factor is satisfied. The generator once existed, and it is material to the proof or defense of a claim at issue in this case. Plaintiff engaged in an affirmative act causing the generator to be lost. Plaintiff did so while he knew or should have known of his duty to preserve the evidence. And his scrapping of the generator cannot be credibly explained as not involving bad faith (as that term is construed in this context) by Plaintiff. Indeed, Plaintiff fails to offer an excuse that in any way

9

places fault on anyone else or which otherwise sets forth a valid reason to destroy the generator. *See Austrum*, 149 F. Supp. 3d at 1351-52 ("[T]he Court finds that Federal acted in bad faith as that term is defined in *Flury*. . . . While the Court does not find that Federal acted deliberately to hinder Austrum's case, Federal had sole control over the application and shirked its legal duty to preserve it. Under the facts of this case, Federal is sufficiently culpable, and the prejudice to Austrum is sufficiently high, to warrant a finding of bad faith as defined in *Flury*."). Therefore, spoliation exists warranting sanctions.

"Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Bos. Boat III*, 310 F.R.D. at 523 (citation omitted). Defendant requests that the Court either (i) dismiss the lawsuit in its entirety or (ii) exclude any Plaintiff liability expert testimony and take judicial notice and issue a burden shifting presumption jury instruction that establishes that (a) none of the generator's parts were defective; (b) the underlying incident was not caused by the generator malfunctioning; and (c) following the alleged incident, there was no damage to the interior or exterior of the generator. ECF No. [33] at 4-5, 12-13.

Upon review and consideration, the Court does not agree that the severe sanction of dismissal is appropriate, nor does it conclude that excluding Plaintiff's expert testimony is merited. Regarding the former, Defendant has not shown that Plaintiff's actions were malicious, nor has it shown that Plaintiff intended to harm Defendant or impede this litigation.[3] Regarding the latter,

---

[3] In arguing for dismissal, Defendant states that "without examining the actual Generator, how do we know that Plaintiff is telling the truth about it being involved in the alleged explosive event?" ECF No. [33] at 11. The adversarial system is designed to alleviate Defendant's concerns on this point. Not only can Plaintiff's testimony be thoroughly probed by cross-examination, Defendant

Defendant's expert witnesses have opined that Plaintiff's allegations are not supported despite their inability to directly examine and test the generator itself. *See* ECF No. [33-2] at 2 ("Mr. Penick's description of the events was inconsistent with the sequence or mechanism with this type of event as reported."); ECF No. [33-3] at 4 ("An exemplar Harbor Freight Predator 4000 gasoline-powered, electric generator was purchased by Rimkus for this investigation. The generator was inspected and operated. During this testing, the generator operated as expected and did not catch fire. Based on the inspection of the exemplar generator, no design defects were observed with this model generator."). Excluding Plaintiff's potential liability experts, which would result in pitting Plaintiff's words alone against Defendant's experts in an explosion-related products liability lawsuit, is too harsh a sanction under these circumstances. Instead, a fairer sanction and less punitive measure to cure Defendant's prejudice is an appropriate adverse inference jury instruction.[4] *See also Austrum*, 149 F. Supp. 3d at 1351 n.8 ("Under *Flury*, *Hicks*, and *Byrnie*, a malicious motive is not required to impose an adverse inference instruction.").

"There are different types of adverse inferences: (1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decides whether to draw an adverse inference." *Schultze*, 2018 WL 4859071, at *7. Here, the Court

---

can also put forward evidence to counter Plaintiff's version of events. The mere destruction of evidence alone does not justify dismissal sanctions, especially under the present circumstances.

[4] Although Defendant has been prejudiced by Plaintiff's destruction of the generator, its prejudice is not so extreme that it irreparable. The generator was discarded before the lawsuit was incepted. Neither party has had the benefit of directly testing the generator, and both parties have Plaintiff's counsel's photographs of the generator from November 2018. In this respect, the Court further notes that Defendant's experts relied upon the photographs as part of conducting their analyses. Therefore, the generator's absence does not operate as a total bar to Defendant's ability to defend itself in this litigation.

finds that the second category of adverse inference should be imposed. Under this sanction, the jury is to presume that the destroyed generator was relevant and favorable to Defendant and unfavorable to Plaintiff, but Plaintiff can rebut this presumption through his presentation of evidence, including expert testimony. *See id.* at *8 (determining that the sanction of a rebuttable "presumption that the lost evidence was relevant and favorable to Plaintiff, and disadvantageous to Defendant" is the "least harsh sanction to cure the prejudice"); *Austrum*, 149 F. Supp. 3d at 1351 (same). Through this balance, Defendant's prejudice from the missing generator is sufficiently mitigated while Plaintiff's ability to benefit from the evidentiary problem created by his actions is lessened.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [33]**, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 18, 2020.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record