UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-23134-BLOOM/Louis

GARY R PENICK,

    Plaintiff,

v.

HARBOR FREIGHT TOOLS, USA, INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment, ECF No. [53] ("Motion"). Plaintiff filed a response in opposition, ECF No. [72] ("Response"), to which Defendant filed a reply, ECF No. [77] ("Reply"). The Court has reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I.     BACKGROUND**

This matter stems from a products liability lawsuit that Plaintiff initiated in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida that was removed to this Court on July 29, 2019 on diversity of citizenship grounds. ECF No. [1]. According to the Complaint, ECF No. [1-1] at 10-16, Plaintiff sustained serious injuries to his face and his eyes while operating a Predator 4000 Generator sold by Defendant. In particular, he alleges that after removing the gas cap on top of the generator to check the volume of gas while the generator was running, fumes from the gas tank ignited and created a flash explosion. The explosion resulted in facial burns and bilateral corneal burns to his eyes. The Complaint asserts three causes of action against Defendant: negligence (Count I), strict liability (Count II), and failure to warn (Count III). Defendant filed its

answer and affirmative defenses to the Complaint on August 5, 2019. ECF No. [7].

On August 18, 2020, the Court granted in part and denied in part Defendant's amended motion to dismiss due to Plaintiff's bad faith spoliation of evidence. ECF No. [45] ("Spoliation Order"). In particular, Plaintiff had disposed of the allegedly defective generator before Defendant could examine and test it even though the generator plays a central role in this case. Because Plaintiff's actions amounted to sanctionable bad faith, the Court imposed an adverse inference jury instruction in which the "jury is to presume that the destroyed generator was relevant and favorable to Defendant and unfavorable to Plaintiff, but Plaintiff can rebut this presumption through his presentation of evidence, including expert testimony." *Id.* at 12. As explained in the Spoliation Order, through this balance, "Defendant's prejudice from the missing generator is sufficiently mitigated while Plaintiff's ability to benefit from the evidentiary problem created by his actions is lessened." *Id.* While the Court extended, on several occasions, the period for Plaintiff to disclose his experts and to permit expert discovery, ECF No. [48], Plaintiff did not comply. Plaintiff ultimately disclosed his experts untimely and failed to provide any reports or other disclosures. The Defendant thereafter filed its motions to strike the experts, ECF Nos. [51], [52], which was granted. *See* ECF No. [69].

Defendant now moves for summary judgment on all counts. ECF No. [53].

## II. MATERIAL FACTS

Based on the parties' statements and counterstatements of material facts,[1] along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

---

[1] Defendant filed its Statement of Material Facts, ECF No. [54] ("Def.'s SOMF"), and Plaintiff filed a Statements of Material Facts in Opposition to Defendant's Motion for Summary Judgment, ECF No. [73] ("Pls.' SOMF"), which asserted additional material facts. Defendant filed a Reply in Opposition to Plaintiff's Additional Facts that are Material to the Defendant's Motion for Summary Judgment, ECF No. [78] ("Reply SOMF").

The Predator 4000 Generator, referenced in the Complaint, was allegedly involved in an explosion incident on October 21, 2018. [2] The generator was purchased for Plaintiff and his friend, Sara Perez, by her daughter following Hurricane Irma. ECF No. [33-1] at 24:7-11; 42:10-12. The generator was purchased "brand new" in a box in December 2017 at a Harbor Freight and Tool store in Homestead, Florida during which time Plaintiff picked it out but the daughter paid for it. *Id.* at 68:1-69:2.[3] Following the alleged incident, the generator no longer exists. Def.'s SOMF at ¶¶ 1, 4. After retaining counsel, Plaintiff personally drove the generator to a scrap yard and disposed of it. *Id.* at ¶ 2. Plaintiff's counsel took photographs of the generator before it was disposed. *Id.* at ¶ 3. The photographs taken accurately reflect the condition of the generator immediately following the October 21, 2018 incident. *Id.* at ¶ 4. No changes, modifications, or repairs were made to the generator between October 21, 2018 and the date when Plaintiff's counsel took the photographs. *Id.* at ¶ 5. Although Plaintiff's counsel photographed the generator, no experts examined the generator before it was destroyed. *Id.* at ¶ 7; Pls.' SOMF at ¶ 7. The Court previously sanctioned Plaintiff, as set forth in the Spoliation Order. Def.'s SOMF at ¶ 8 (citing ECF No. [45]).

Before the alleged incident occurred, the generator ran perfectly, and Plaintiff had not

---

[2] According to Plaintiff, on October 21, 2018, he came home and decided to run the generator because he "read the manual that you had to crank it up every so often" and the generator had "been sitting there for a while[.]" ECF No. [33-1] at 71:1-7. After turning on the generator, he wanted to "check the gas" because the gauge said it was empty, so he "reached over and grabbed the cap and opened it up and that's when it happened." *Id.* at 71:8-14; *see also id.* at 78:23-79:5. In particular, after letting the generator run for approximately five minutes, he "[o]pened the cap [on the generator] . . . I had the cap in my hand and I turned around and that's when the explosion happened." *Id.* at 79:6-10. The "generator itself did not explode in the sense that its parts were blown apart," Pls.' SOMF at ¶ 27, but there was a "poof of fire," ECF No. [33-1] at 15:9-16:24. Plaintiff testified that he recalled seeing a blue flame coming from the bottom of the generator during the time of the incident. *Id.* at ¶ 28. The incident involved a flash of fire, a concussive force that threw him to the ground, and a booming sound. ECF No. [33-1] at 15:15-16:20.

[3] The Complaint alleges that a "Predator 4000 Generator was sold by Defendant HFT to Plaintiff" on December 10, 2017. ECF No. [1-2] at 10 ¶ 5.

experienced any problems with it. *Id.* at ¶ 9. On the date of the alleged incident and prior to the alleged explosion, the generator was running well, and Plaintiff did not notice anything out of the ordinary about how it was running. *Id.* at ¶ 10. During his deposition, Plaintiff testified that he would not have opened the cap on the generator while it was running had he known not to open it. Pls.' SOMF at ¶ 22. He stated that he read the owner's manual but neither it nor the generator had warnings stating that you cannot open the cap while the generator is running. *Id.* at ¶ 22; *See also id.* at ¶¶ 24, 25, 30. However, the Owner's Manual & Safety Instructions warns "[d]o not touch engine during use. Let engine cool down after use," "Fire Hazard! Do not fill gas tank while engine is running," "[s]tay alert, watch what you are doing and use common sense when operating this piece of equipment," "[u]se the Generator, accessories, etc., in accordance with these instructions and in the manner intended for the particular type of equipment," [k]eep hands and feet away from moving parts. Do not reach over or across Generator while operating," and "[m]any accidents are caused by poorly maintained equipment" ECF No. [72-3] at 3-4 at ¶¶ 7, 9, 30, 36, 41, 42. Further, the manual warns to "[m]ake sure the Engine Switch is in its 'OFF' position . . . before performing any service, maintenance, or cleaning procedures on the unit," "[d]o not attempt any service or maintenance procedures not explained in this manual or any procedures that you are uncertain about your ability to perform safely or correctly," and to "not refill the fuel tank while the engine is running or hot." *Id.* at 5.

After the alleged incident, the generator was still running, and it did not look different than how it looked before the incident. Def.'s SOMF at ¶ 11; Pls.' SOMF at ¶ 11. Plaintiff is not an expert, and his opinions about what caused the alleged event were formed based on his internet research. Def.'s SOMF at ¶ 12; Pls.' SOMF at ¶ 12. During his deposition, Plaintiff stated that he does not know what would have caused fuel in the generator to ignite but opined that the generator ignited because "it's got brushes and armature." ECF No. [33-1] at 91:19-92:3; *See also* Pls'

SOMF at ¶ 21. After the alleged incident, Plaintiff did not start the generator again before disposing of it. Def.'s SOMF at ¶ 14; Pls.' SOMF at ¶ 14.

Defendant's fire and explosion causation expert, Thomas Young, opines that "there is no outward indication of thermal damages and a complete absence of thermal deformation to the Subject Generator" shown in the photographs taken by Plaintiff's counsel. Def.'s SOMF at ¶ 15. Mr. Young opines that "[b]oth of these observations are significant as they are inconsistent with the type of the event alleged" by Plaintiff. *Id.* According to Mr. Young, "the evidence in this case does not support Mr. Penick's allegation that the Subject Generator was involved in the alleged incident." *Id.* at ¶ 16.[4] Defendant's mechanical engineering expert, Avelaino McGibbon, opines that Plaintiff's photographs of the generator "do not show evidence of any type of defect. Additionally, there are no signs of fire-related damage to the Subject Generator." *Id.* at ¶ 17. Mr. McGibbon inspected and operated an exemplar Predator 4000 Portable Generator ("Exemplar Generator"). *Id.* at ¶ 18. He observed that the "Exemplar Generator operated as expected, it did not malfunction and it did not catch fire. No defects of any kind were observed on the Exemplar Generator." *Id.* Mr. McGibbon opines that "the evidence in this case does not support Mr. Penick's allegation that the Subject Generator was defective." *Id.* at ¶ 19. He also opines that "[t]here is also

---

[4] In a May 22, 2020 report, Mr. Young stated that "[t]o the extent any evaluation could be conducted on the generator reported to have spontaneously erupted into an explosive event remains a non-validated event. There was no supporting evidence that the generator represented in the photos provided was involved in a fiery explosive event. . . . The scenario described by Mr. Penick would be categorized as essentially 'unconfined'. In other words, this was an open vessel of fuel whereby emanating fuel and/or its volatile vapors while the generator as described as running/operating would have been the most probable root cause accepting the reported incident at face value. The absence of the presence of any thermal deformation to the generator as provided in the photographs was also significant. Mr. Penick's description of the events was inconsistent with the sequence or mechanism with this type of event as reported. The pressure rise associated with the ignition of an unconfined diffuse vapor is not enough in magnitude or duration to result in the damage presented by the images nor the description of explosive force by Mr. Penick." ECF No. [33-2] at 2 (cited by Pls.' SOMF at ¶ 23; Reply SOMF at ¶ 23).

no evidence of a design defect that could cause the explosion alleged by Mr. Penick." *Id.* at ¶ 20.

### III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary

judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion and the parties' arguments.

## IV. DISCUSSION

Defendant seeks summary judgment in its favor on each count. The Court will address the three counts in turn.

### A. Count I and II – negligence and strict liability

According to the Complaint, Defendant "was and is engaged in the business of packaging, distributing, testing, merchandising, and providing the type of Predator 4000 Generator used by the Plaintiff," and Defendant owed Plaintiff a duty to "reasonably test, inspect, package, warn, label, distribute, dispense, and market" the generator in such a way that Plaintiff would not "sustain facial burns to the face and corneas of the eyes when removing the cap to the generator's gas tank while the generator was running." ECF No. [1-2] at ¶¶ 8, 11. Plaintiff alleges that Defendant breached its duty of reasonable care because Plaintiff used the generator "in a normal manner and while attempting to check the amount of gas in the tank . . ., the fumes from the gas tank ignited creating a flash explosion which burned his face and corneas, bilaterally." *Id.* at ¶¶ 12-13. He thus asserts a claim for negligence in Count I.

In Count II, strict liability, Plaintiff alleges that the generator "was defective when it left the possession of" Defendant, and that it was defective "in its design, manufacture, component and failure to have sufficient warning instructions, all of which made" it "inherently dangerous for use by the Plaintiff." *Id.* at ¶¶ 18, 21. In Plaintiff's view, Defendant is strictly liable for "placing a defective, mislabeled, improperly packaged, improperly labeled and unreasonably dangerous

product on the market[.]" *Id.* at ¶ 24.

"Under Florida law, to prevail in a products liability case for either negligence or strict liability, the plaintiff must establish a defect in the subject product[.]" *Fagundez v. Louisville Ladder, Inc.*, No. 10-23131-CIV, 2011 WL 6754089, at *2 (S.D. Fla. Dec. 22, 2011), *report and recommendation adopted*, 2012 WL 12844303 (S.D. Fla. Jan. 19, 2012) (citing *W. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976)). *See also Lesnik v. Duval Ford, LLC*, 185 So. 3d 577, 581 (Fla. 1st DCA 2016) ("To assert a claim for a defective product, whether the claim is for negligence or strict liability, a plaintiff must show '(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier parted possession with the product.'"). Defects, moreover, "must be proven by expert testimony." *Fagundez*, 2011 WL 6754089, at *2 (collecting cases); *Eghnayem v. Bos. Sci. Corp.*, No. 1:14-CV-024061, 2016 WL 4051311, at *6 (S.D. Fla. Mar. 17, 2016), *aff'd*, 873 F.3d 1304 (11th Cir. 2017) ("Federal courts applying Florida law have held that expert testimony is necessary to prove a product is defective."); *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011) ("To prevail in a products liability case under Florida law for either negligence or strict liability, Plaintiff must establish a defect in the subject product . . . And expert testimony is necessary to establish the existence of a [] defect."); *Alexander v. Danek Med., Inc.*, 37 F. Supp. 2d 1346, 1349 (M.D. Fla. 1999) ("To prove a defective product, a defect must be proven by expert testimony.").

Defendant maintains that summary judgment is warranted in its favor because Plaintiff "does not have any liability experts" and there "are no experts in this case that will testify that the Generator was defective or that Plaintiff's injuries were caused by any such defect." ECF No. [53] at 8. Further, it notes that its experts' opinions that the generator was not defective are unrebutted. *Id.* at 9. Upon review, the Court agrees that summary judgment in Defendant's favor is proper. *See*

*Savage v. Danek Med., Inc.*, 31 F. Supp. 2d 980, 984 (M.D. Fla.), *aff'd*, 202 F.3d 288 (11th Cir. 1999) (granting summary judgment in favor of defendant because plaintiff failed to provide expert testimony that the screw at issue was defective); *Alexander*, 37 F. Supp. 2d at 1350 (granting summary judgment in favor of defendant where there was no expert opinion that the product was defective, and noting that "[a]s this Court wrote in *Savage*, it need not reach the issue of causation because Plaintiff has failed to show any evidence that he can use to prove the device is defective").

While Plaintiff argues that the Court, in the Spoliation Order, stated that "Plaintiff can rebut this presumption [that the generator was relevant and favorable to Defendant and unfavorable to Plaintiff] through his presentation of evidence," ECF No. [72] at 3, that does not mean that the Court authorized Plaintiff to substitute expert opinion with his lay testimony for purposes of establishing a defect. Instead, as set forth in the Spoliation Order, the Court explained that it adopted the "second category of adverse inference," which imposed a rebuttable presumption, rather than other forms of adverse inferences, such as those which deemed facts admitted. ECF No. [45] at 11-12. The Spoliation Order does not eliminate Plaintiff's burden to prove a defective product through expert testimony. This is all the more so considering that the Court rejected Defendant's invitation to dismiss the case in its entirety, and it explained that excluding Plaintiff's potential liability experts at that time would be "too harsh a sanction" because it would "result in pitting Plaintiff's words alone against Defendant's experts in an explosion-related products liability lawsuit[.]" *Id.* at 11. Further, the Court later extended the time for Plaintiff to secure and disclose liability experts, but he failed to do so timely and properly and his experts were stricken.

Finally, Plaintiff's citation to *United Servs. Auto. Ass'n v. Rey*, No. 2D18-5120, 2020 WL 4492304, at *3 (Fla. 2d DCA Aug. 5, 2020) is misplaced. That lawsuit does not involve product liability claims, a motion for summary judgment posture, and while there was no expert to rebut the medical expert's opinion, "there were two medical records that cast doubt upon [the expert's]

10

conclusion that the accident caused" the injury, and the expert's records and testimony "revealed contradictions." Here, by contrast, Plaintiff not only fails to present expert testimony to establish a defect, Plaintiff fails to produce evidence "cast[ing] doubt" on any of the expert's opinions. Accordingly, having demonstrated that there is no genuine dispute that the generator was not defective, summary judgment in Defendant's favor as to Counts I and II is warranted.

### B. Count III – failure to warn

In Count III, Plaintiff alleges that Defendant knew or should have known that removing the cap on the generator while it was operating "would cause the fumes from the gas tank to ignite and cause facial burns and corneal burns to the person who removed the cap to the gas tank," and that Defendant breached its duty to warn Plaintiff about this danger. ECF No. [1-2] at ¶¶ 26-28. According to the Complaint, Defendant's failure to warn Plaintiff about the dangers of removing the generator's cap caused his injuries. *Id.* at ¶ 29.

"Under Florida law, to succeed on a failure to warn claim a plaintiff must show (1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." *Eghnayem*, 873 F.3d at 1321. "'While in many instances the adequacy of warnings is a question of fact . . . it can become a question of law where the warning is accurate, clear, and unambiguous." *Id.* (citation omitted; punctuation altered). Further, a "manufacturer has a strict duty to warn of its product's dangerous propensities only in those instances where the commodity is inherently dangerous. . . . Whether or not a manufacturer should have warned the consumer of a product's dangerous propensities is ordinarily a question for the jury based upon the manufacturer's foreseeability of injury to the consumer." *Brito v. Cty. of Palm Beach*, 753 So. 2d 109, 112 (Fla. 4th DCA 1998); *see also Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1214 (M.D. Fla. 2011) ("In order to prevail on a failure-to-warn claim, a plaintiff must establish the existence of a duty. A manufacturer's duty to warn

11

arises when there is a need to inform consumers of dangers of which they are unaware.").

Defendant argues that Count III fails because it had no duty to warn Plaintiff not to open the generator's cap while it was operating because there is no evidence that the generator was defective, dangerous, or even involved in the alleged incident. ECF No. [53] at 11-12. Upon review, the Court disagrees. As an initial matter, Plaintiff has produced evidence that the generator was involved in the alleged incident. This is based on his testimony that a poof of fire exploded in his face after he removed the generator's cap, which generator he disposed of after his counsel photographed it. But more importantly, while Defendant asserts that the generator is not defective, it fails to produce evidence that the generator is not "inherently dangerous" such that it had no duty to warn Plaintiff of dangers in removing the generator's cap. To start, the generator's owner's manual contains numerous warnings in bolded capitalized print warning that the generator can cause "serious injury" and "death." *See* ECF No. [72-3]. It also cautions against risks associated with fire hazards and explosions, carbon monoxide poisoning, electrocutions, and other hazards when handling and operating the generator. *Id.* Indeed, it has a section devoted to instructions and hazards associated with checking and filling fuel. *Id.* at 10.

Despite the warnings contained in the owner's manual, both parties agree that the manual does not expressly warn against opening the cap to the gas tank while the generator is running. *See* Pls.' SOMF at ¶ 25. They likewise agree that there were no warnings appearing on the generator cautioning against opening the cap while the generator is operating. *Id.* at ¶ 24. And neither the label placement map nor photographs of the generator show warnings against opening the gas cap while the generator is on. *See id.* at ¶ 30. Against this backdrop, Plaintiff has testified that he would not have opened the cap while the generator was running had he known not to open it. Accordingly, Plaintiff has produced evidence supporting a failure to warn claim. Because Defendant fails to establish that it had no duty as a matter of law to provide warnings to Plaintiff, and it otherwise

does not argue that the warnings depicted in the owner's manual were adequate as a matter of law, summary judgment in its favor on this count is unwarranted.[5] *See Brito*, 753 So. 2d at 112 (reversing summary judgment on failure to warn claim and explaining that "[t]he sufficiency and reasonableness of a manufacturer's warnings are fact questions appropriate for the jury to decide unless such warnings are 'accurate, clear, and unambiguous.'") (citing *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989)).

V. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [53]**, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 9, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[5] Defendant's citation to *Lesnik*, 185 So. 3d 577, for the proposition that it had no duty to warn Plaintiff about the generator is unpersuasive. In *Lesnik*, unlike here, the truck at issue had been sold from the automobile dealer to an original buyer, who later modified the truck, and then resold the truck to the plaintiff, who also modified the truck before he was injured. Additionally, the record in that case failed to show any evidence that there was anything "inherently dangerous" about the truck when it was sold. By contrast, the owner's manual makes repeated mention of the importance of undertaking various safety precautions when operating the generator, especially as it pertains to preventing fire-related injuries and even death.